CASADY v. LOWRY ET AL.

1. **Taxation:** IN AID OF RAILROADS: CERTIFICATE. If the certificate of the clerks of election required by chapter 102, Laws of 1870, is reasonably susceptible of a construction which will show a compliance by them with the provisions of the statute, such construction will be given it, notwithstanding any imperfections in form.

2. ———: ———: LEVY. A levy for "all loans for city purposes, district tax, railroad tax, that has been certified according to law," was *held* to be sufficient.

3. ———: ———: CERTIFICATE OF TRUSTEES. The certificate of the trustees, reciting that the company has so complied with the act as to be entitled to the tax, was *held* to be in compliance with the terms of the statute requiring that it should recite a compliance in all respects with the statutes.

4. ———: ———: COLLECTION IN PART. While a tax voted to aid in the construction of a railroad cannot be collected in instalments, yet, if the company shall not have expended enough in the city or township to entitle it to the whole, it may be entitled to collect the part earned in lieu of the whole.

Casady v. Lowry.

5. ———: ———: NARROW GAUGE. A tax voted to aid in the construction of a railroad is collectible if the road constructed be of narrow gauge, unless it be shown unable to do the business of the country through which it passes.

*Appeal from Polk Circuit Court.*

FRIDAY, OCTOBER 25.

THE defendant Lowry is the treasurer of Polk county, and as such was, at the time of the commencement of this action, proceeding to collect a tax voted in Des Moines township, in said county, to aid in the construction of a railroad belonging to the defendant the Des Moines & Minnesota Railroad Company. The plaintiff is a tax-payer of Des Moines township, and as such he brings this action to enjoin the defendant Lowry from the collection of the tax. He claims that there was no valid levy, and that even if there was the tax is not delinquent. The facts stated in the petition as constituting the only ground for the defendant Lowry's proceedings are, in substance, as follows: The tax was voted under the act of 1870, to-wit, in August, 1871, being one per cent on the assessed value of the property of the township, and amounting to twenty-six thousand three hundred and twenty-one dollars. The judges and clerks of the election made a certificate, which is in these words:

"At an election held at the court-house in Des Moines, in Des Moines township, Polk county, State of Iowa, on the 24th day of August, 1871, there were six hundred votes cast for or against taxation, as follows, to-wit:

"For taxation,        -        -        -        320 votes.
"Against taxation,        -        -        -        280 votes.

"Said election was a special election, as per call hereto attached.

"A true return.        G. W. BALDWIN,
                       "L. M. G. BARNETT,  } Judges.
                       "GEO. M. WALKER,

"Attest: S. MOORE,   } Clerks."
         "D. H. HAND,

The call was for the purpose of submitting to the legal voters of the township the question of aiding the construction of the Des Moines & Minnesota Railroad, by levying a special tax of one per cent.

At a meeting of the board of supervisors in September following it was ordered that the tax levy for 1871 for the different funds be as follows : "For State, two mills ; for schools, one mill ; for county, four mills ; * * * a poll tax of fifty cents on each person liable ; also, all loans for city purposes, district tax, railroad tax that has been certified to the board according to law."

The tax list delivered to the treasurer included the tax in question, and annexed to the list was a warrant commanding the collection of the taxes, including the tax in question, signed by John B. Miller, as county auditor and clerk of the board of supervisors.

On the 21st of November, 1873, the engineer in charge of the construction of the railroad executed to the company a certificate and estimate showing an expenditure between the 1st of June and the 20th of November of that year of forty-nine thousand nine hundred and seventy-five dollars.

On the same day the president of the railroad company drew an order on the county treasurer for one-half that amount, which order was accompanied by a certificate of the trustees of the township to the effect that the company had so far complied with chapter 102 of the Acts of the Thirteenth General Assembly as to entitle it to draw from the treasurer of Polk county, on the accompanying order of its president, the sum of twenty-four thousand nine hundred and eighty-seven dollars and thirty cents.

The treasurer then gave notice that the railroad company had complied with chapter 102 of the Acts of the Thirteenth General Assembly ; that the tax voted was due, and unless paid within sixty days would become delinquent, and he would proceed to collect the same.

The tax assessed to the plaintiff not being paid at the time

of the commencement of this action, the defendant treasurer was about to sell certain real estate belonging to the plaintiff to enforce the collection.

To the petition containing, in substance, the foregoing statements, the defendants demurred, and the court sustained the demurrer. The plaintiff electing to stand by his petition, judgment was rendered for defendants. Plaintiff appeals.

*Brown & Dudley,* for appellant.

*Barcroft, Given & Drabelle,* for appellees.

ADAMS, J.—The validity of the levy is questioned upon several grounds. In the first place it is insisted that the clerk's certificate in regard to the result of the election is insufficient. The statute provides that the clerk of the election shall certify to the county auditor the rate per centum of tax voted. It is contended that the certificate does not run to the county auditor. It does not, as we have seen, purport to run to any one, but if it was delivered to the county auditor it must be regarded as made to him. As it was the duty of the clerks to deliver the certificate to him, and of the board of supervisors to act upon it, and as the board acted, we think that we may presume, in the absence of evidence to the contrary, that it was so delivered.

The certificate is further objected to on the ground that it purports to be the certificate of the judges of the election, and not of the clerks. The plaintiff insists that the certificate purports merely to be attested by the clerks, by which it is said that we are to understand, not that they certify the certificate is true, but that it was signed by the persons by whom it purports to be signed. It may be conceded that this is the ordinary meaning of *attest,* as applied to an instrument. But we think that in this case the clerks designed to go further. The law required them to make the certificate as their own, and not merely to witness it. We find their names written under the

1. TAXATION: in aid of railroads: certificate.

words, "A true return." While these words might be referred wholly to the judges, yet if the certificate is reasonably susceptible of a construction which will show a compliance by the clerks with the law, and render it valid, we should give it such construction; and we have to say that we think it is susceptible of such construction.

It is further objected that the words in which it was attempted to levy the tax are insufficient to make a valid levy. The levy is for "all loans for city purposes, district tax, railroad tax that has been certified according to law." It is contended that this is not an absolute levy of a railroad tax; that it is made subject to its being determined that a railroad tax had been certified according to law; and that, before it could appear that the tax in question was levied, it should be determined that that tax had been certified according to law. It is further contended that it was the duty of the board to so determine, and that it has not done so.

*2. ——: ——: levy.*

Properly the levy should be explicit enough to show upon its face what tax is levied. But in view of all that was done it appears to us that we could not hold the levy void without laying too much stress upon matters which are merely formal. This tax, as we have held, was certified according to law. It was the duty of the board to place it in the tax-list. Chapter 102 of the Acts of the Thirteenth General Assembly. It was placed in the tax-list. The only question is whether it was placed there by order of the board. If so, it appears to us that the levy may be taken in connection with that fact and upheld. It is averred that there was no such order, and such must be taken to be the fact, unless there is enough shown to raise a conclusive presumption that there was. That there is enough shown appears to us to be clear. If the board could have been compelled to order done what was done without its order, why should the board be heard to say that it was done without its order? We think it should not, and for the same reason we think that the plain-

tiff should not. If that is done without the order of the board which the board could have been compelled to order, the law will adopt the act for the board, and consider it as done by its order.

But it is contended that, even if the levy is valid, the tax is not collectible. It is said that the township trustees' cer-

3. ——: ——: tificate is insufficient. The language of the certifi-
certificate of
trustees.          cate is that the company "has so complied with the act as to entitle it to draw the sum of twenty-four thousand nine hundred and eighty-seven dollars and thirty cents." The act of 1872, which the plaintiff claims governs the certificate, provides that the trustees shall certify that the company has, in all respects, complied with the statutes; but the company could not become entitled to draw the sum mentioned, or any other sum, without complying with the statutes in all respects. We think, therefore, that the certificate is not liable to the objection taken. It is true that the certificate does not show that the company had become entitled to the whole tax, but that must be because it was not wholly earned, and not because the statutes had not been complied with, if the company had become entitled to a part of the tax.

But it is said that the earning of a part of the tax does not make the whole compulsorily collectible, and that no part of

4. ——: ——: the tax is thus collectible until the whole is.
collection in
part.          Section 3 of the act of 1872 provides, in effect, that the tax shall not be collectible by sales until earned; and in *Harwood v. Case*, 37 Iowa, 692, it was held that the tax is not collectible in instalments. It is insisted, therefore, by the plaintiff that where only a part of the tax appears to be earned, as in this case, the collection of even that part is not to be made forcibly.

To this the defendant replies that section 3 of the act of 1872 is unconstitutional; but that objection was raised to the section in *Harwood v. Case*, above cited, and the constitutionality of the section was upheld, and in that case it was conceded to have a retrospective operation. Not only was the

tax voted, but the work was done prior to the act. In the present case the work was done subsequently to the act. It seems entirely clear that the obligation of the contract, if any, in this case was not impaired. No contract in favor of the company arose, except by implication, from the performance of the work, and it could not antedate the performance.

While, therefore, we hold that no part of the tax is collectible by sales until that part is earned, and that the tax is not collectible by instalments, yet it appears to us that a part, if earned, may be collected in satisfaction of the whole. The action of *Harwood v. Case* was brought expressly to collect a part of the tax as an instalment. In the present case an order was drawn, and although it was drawn for a part, it does not appear affirmatively that it was drawn for an instalment. It was certainly not so drawn if the work had been completed, and the order covered all that had been earned, and all that could be earned. As, then, it does not appear affirmatively that the order was drawn for an instalment, and as it would have been improper and useless if it had been, we may presume that it was not. In our opinion, then, a part of the tax, to-wit: so much thereof as had been earned, was compulsorily collectible. Any other view, we think, would pervert the design of the law. The company expended in Des Moines township a little less than fifty thousand dollars, which would give it a little less than twenty-five thousand dollars of the tax, the measure of its subsidy being limited by statute to one-half the amount expended. The one per cent voted amounted to a little more than twenty-six thousand dollars. According to the plaintiff's theory, if the company had completed its work, and could properly expend nothing more, nothing was then or ever would be due it. If this is so, it was the misfortune of the company that the tax payers were so liberal in their bounty, or that that part of the road cost so little.

The plaintiff complains that the road contemplated, and in

reference to which the tax was voted, was to be of ordinary gauge, and that the one built is of narrow gauge and inferior carrying capacity; but it was held in *Meader v. Lowry*, 45 Iowa, 684, that if such road has sufficient capacity for all the business, and can do it as economically as a road of wider gauge, the tax payers should not complain. It was so held upon the supposition that the whole tax voted could be collected. For a still stronger reason it would seem to be so if the tax payers can have the benefit of the road with the payment of less than the whole tax.

When, therefore, the company's order was presented to the treasurer, covering, as might be presumed, their entire claim, it became his duty to collect such portion of the tax as was necessary to pay it. The amount collected from each tax payer was easily ascertainable. The amount thus due from each should have been received in satisfaction of the whole.

If the treasurer was proceeding to collect the whole tax, as we think the petition should be understood as averring, his duty was misconceived by him. But to entitle the plaintiff to the aid of a court of equity to restrain the sale of his property he should have tendered the amount actually due on it. *Rosenberry v. Huff*, 27 Ind., 12; *Bond v. The City of Kenosha*, 17 Wis. 284. The only qualification to the rule is that the part due should be readily distinguishable. That it was in this case seems evident. The plaintiff avers in his petition the whole amount of tax and the amount of the order. The amount due from a given tax payer is a mere matter of computation.

We think that the judgment of the Circuit Court must be

AFFIRMED.